[No. 36719. En Banc. January 23, 1964.]

NORTHERN COMMERCIAL COMPANY, *Appellant,* v. KING COUNTY *et al., Respondents.* *

*Reported in 388 P. (2d) 546.

*Jones, Grey, Kehoe, Hooper & Olsen, Albert Olsen,* and *Dexter A. Washburn,* for appellant.

*Charles O. Carroll, James J. Caplinger,* and *William L. Paul, Jr.,* for respondents.

HAMILTON, J.—By way of a declaratory judgment proceeding, plaintiff challenges the method of evaluating its stock, wares, and merchandise for ad valorem tax purposes. From an adverse determination in the trial court, plaintiff appeals.

Plaintiff was engaged in the business of selling and distributing tractors, scrapers, and other dirt-moving equipment in King County, Washington. On January 1, 1961, plaintiff had an inventory of such merchandise and parts of the value of $1,753,508. The King County Assessor, in preparing the assessment list for the purpose of the levy of annual taxes to be made by the board of county commissioners in October, 1961, valued plaintiff's inventory at $2,099,773. The assessor based his valuation upon the average monthly inventory maintained by plaintiff during the year 1960.

RCW 84.40.020 provides:

"All real property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of January of the year in which it is assessed. All personal property in this state subject to taxation shall be listed and assessed every year, with reference to its value

and ownership on the first day of January of the year in which it is assessed: *Provided,* That if the stock of goods, wares, merchandise or material, whether in a raw or finished state or in process of manufacture, owned or held by any taxpayer on January 1 of any year does not fairly represent the average stock carried by such taxpayer, the county assessor shall list and assess such stock upon the basis of the monthly average of stock owned or held by such taxpayer during the preceding calendar year or during such portion thereof as the taxpayer was engaged in business."

Plaintiff challenges the assessor's application of the proviso of RCW 84.40.020 upon three grounds: (1) That the statute does not confer authority upon the assessor to determine whether the January 1 inventory does or does not fairly represent the average inventory; (2) that if the statute does confer such authority, it is discriminatory and unlawfully delegates legislative authority; and (3) that the phrase "fairly represent" propounds an indefinite standard, thus rendering the statute void.

We disagree with each of plaintiff's contentions.

At the outset, it should be noted that the method, per se, of estimating the value of taxable personal property, and particularly the stock in trade of a merchant, for tax purposes by averaging the monthly inventory of the preceding year is not questioned by the plaintiff. Indeed, it has long met with legislative approval in this country. Some 17 states[1] make provision, in one form or another, for its use by assessors. The United States Supreme Court, speaking obliquely upon the subject, in *Shotwell v. Moore,* 129 U. S. 590, 598, 600, 32 L. Ed. 827, 9 S. Ct. 362 (1889), stated:

"It is to be conceded that a State may make the ownership of property subject to taxation relate to any day, or days. or period of the year, it may think proper, and that the selection of a particular day on which returns are to be made by taxpayers of their property for the purposes of assessment does not necessarily preclude the making of assessments as of other periods of the year. The State of Ohio, like many and perhaps most of the other States, collects

[1] Alabama, Arkansas, Connecticut, District of Columbia, Florida, Iowa, Louisiana, Maine, Maryland, Michigan, Nebraska, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Wyoming.

from the business and property subject to taxation for the year preceding the specified date, the elements of an assessment of a tax to be paid by the taxpayer for the year succeeding that date, and it has in several instances recognized the fact that an assessment which assumed that all property should only be assessed to those who were the owners of it on the precise date named was not a just apportionment. Assessments of land are made once in ten years, with such additions every year as the value of improvements justifies. So in the case of merchants engaged in buying and selling goods, the stock on hand on that day might be either the largest or the smallest of any period during the year preceding. If it were either, a tax intended to be governed by the amount of property owned or held by them during such year would be evidently unjust either to them or to the State.

"To avoid this evil the statute in Ohio provides for the ascertainment of the monthly average amount or value of the property or goods in which such parties were dealing, and for the assessment for taxation on that basis. Many kinds of business must be of this character.

" . . . .

" . . . We know of no principle which forbids that State from taking the whole period of a business year already past as the best means of ascertaining how much the taxpayer shall be required to pay on property which is admitted to be taxable, and how much he shall deduct for the non-taxable securities of the State and of the United States."

■ Plaintiff premises its first contention upon the assertion that the proviso of RCW 84.40.020 was intended solely for the relief of those taxpayers who have large inventories on January 1, the assessment date; *ergo,* only the taxpayer may invoke the average inventory method of evaluation. We do not conceive the legislative purpose to be so limited.

The fundamental purpose of the statute is to produce a true and fair evaluation of the property assessed within the contemplation of Const. Art. 7, § 2 (amendment 17)[2] and

[2]"Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed forty mills on

RCW 84.40.030.[3] It alleviates the situation produced by an unusually high, or an unusually low, inventory on the assessment date, occasioned by seasonal or intentional fluctuations. It benefits either the taxpayer or the public interest, depending upon the situation presented. We cannot read into the statute an exclusive option upon the part of the taxpayer to invoke the average-inventory method of evaluation. It is our view that either the assessor or the taxpayer may initiate the method, so long as a true and fair valuation for assessment purposes is the end result.

Plaintiff's second contention is predicated upon the assertion that by prescribing alternative methods of evaluating stocks of goods, wares, and merchandise, the legislature either violated uniformity requirements of our state constitution (Art. 7, § 1 (amendment 14))[4] or unlawfully delegated a legislative function to the assessor.

Washington Const. Art. 7, § 2, and RCW 84.40.030 provide that all property shall be assessed at 50 per cent of its "true and fair value." By RCW 84.40.020, *supra,* the legislature provided that personal property should be listed and assessed "with reference to its value and ownership" on the first day of January of the year in which it is assessed, with a proviso that, if a stock of goods, wares, and merchandise held upon such date did not fairly represent the taxpayer's average stock, "the county assessor shall list and assess such stock upon the basis of the monthly average."

the dollar of assessed valuation, which assessed valuation shall be fifty per centum of the true and fair value of such property in money: . . ." Const. Art. 7 § 2 (amendment 17).

[3] "All property shall be assessed fifty percent of its true and fair value in money. In determining the true and fair value of real or personal property, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation; nor shall he adopt as a criterion of value the price for which the said property would sell at auction, or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such price as he believes the same to be fairly worth in money at the time such assessment is made. . . ." RCW 84.40.030.

[4] "The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. . . ." Const. Art. 7, § 1 (amendment 14).

■ The basic yardstick of the assessed value is the true and fair value of the property assessed. The basic function of the assessor is to determine such true and fair value, and our law proceeds upon the theory that he is competent and qualified to evaluate any and all kinds of property. *Northwestern Imp. Co. v. McNeil,* 100 Wash. 22, 170 Pac. 338. In making an assessment the assessor acts in a quasi-judicial capacity. *Ozette R. Co. v. Grays Harbor Cy.,* 16 Wn. (2d) 459, 133 P. (2d) 983. No person or corporation has a vested right to have property assessed in a particular way. *Puget Sound Power & Light Co. v. Seattle,* 117 Wash. 351, 201 Pac. 449.

Implicit within the proviso of RCW 84.40.020, calling for the average monthly inventory, is the concern of the legislature for greater, rather than less, uniformity in the tax base. The legislature, in providing methods of determining the true and fair value of a stock of goods, wares, and merchandise is neither abdicating its plenary taxing power nor unlawfully delegating a legislative function. On the contrary, it is performing a legislative function. 3 Cooley on Taxation (4th ed.) § 1134, p. 2289.

We find no merit in either facet of plaintiff's second contention.

By its third contention, plaintiff argues that the phrase "fairly represent," as used in RCW 84.40.020, propounds an inadequate and indefinite standard upon which to hinge application of the average inventory method of evaluation. Plaintiff, in effect, asserts the legislature should have provided a percentage differential or some other similar criterion.

■ Evaluation of a stock of goods, wares, and merchandise is in many, if not all, instances a complex undertaking. It involves various and varying factors. In the end, as with other types of property, evaluation usually presents a question of fact upon which opinions can vary. The phrase "fairly represent" has a common, ordinary, and easily understood meaning. It is not ambiguous. The use of the term in lieu of another or different criterion was and is a legis-

lative prerogative. In the context used, we cannot say it is an indefinite standard.

Finally, plaintiff contends that its January 1, 1961, inventory does in fact represent its average inventory. It is undisputed that plaintiff's January 1 inventory was 16 per cent less than the average inventory possessed by plaintiff during 1960. Under such circumstances, we cannot say as a matter of fact or law that plaintiff's January 1 inventory fairly represents its average stock.

The judgment is affirmed.

ALL CONCUR.

March 3, 1964. Petition for rehearing denied.